Stanley **MESHKOV**, Administrator of the Estate of Glenn Meshkov, Deceased,

v.

**ABINGTON TOWNSHIP** and Detective Alex Panechello, Officer Philip J. Ridge, Officer Lawrence DiJoseph, Corporal Bruce Dean, Herbert J. Mooney and Ohio Medical Products.

Civ. A. No. 79–1388.

United States District Court, E. D. Pennsylvania.

July 15, 1981.

Francis E. Marshall, Robert G. Hanna, Marshall, Dennehey, Warner, Coleman & Goggin, Philadelphia, Pa., defendants Abington Tp., Panechello, Ridge, DiJoseph and Dean.

William C. Foster, Kelly, Harrington, McLaughlin & Foster, Philadelphia, Pa., for defendant Ohio Medical Products.

## MEMORANDUM

RAYMOND J. BRODERICK, District Judge.

Before the Court in this civil rights action is the motion to dismiss of various defendants. The plaintiff, Stanley Meshkov, is the father and the administrator of the estate of Glenn Meshkov, who hanged himself in a detention cell at the Abington Police Department on February 27, 1978. The plaintiff initially filed this action against Abington Township (Township) and five of the police officers on the Township's force in their individual and official capacities. The five police officers named in the complaint were Chief Mooney, Corporal Dean, Detective Panechello, Officer Ridge, and Officer DiJoseph. ` The complaint charged the de-

fendants with violations of 42 U.S.C.A. §§ 1983, 1985(3), 1986, 1988 and the Fourth, Fifth, Eighth and Fourteenth Amendments. Pendent state law claims were also asserted. Subject matter jurisdiction was based upon 28 U.S.C.A. §§ 1331 and 1343. The plaintiff later amended the complaint to include Ohio Medical Products, which the plaintiff alleged was negligent in the design and manufacture of the resuscitator which was used in an attempt to revive the decedent after he hanged himself. Subject matter jurisdiction as to Ohio Medical Products is based on diversity of citizenship. Ohio Medical Products asserted a cross-claim for contribution or indemnity against the other defendants on the basis that the negligence of the other defendants caused the incident upon which this action is based. The Township, Officer Ridge, Officer DiJoseph, Detective Panechello, and Corporal Dean have asserted a cross-claim against Ohio Medical Products for contribution or indemnity.

The record in this action shows that Chief Mooney has not been served with process by either the plaintiff or Ohio Medical Products. The four other officers and the Township have filed a motion to dismiss the Township, Corporal Dean, and all claims against the other defendants except the section 1983 claims. For the reasons hereinafter set forth, we will grant the moving defendants' motion and will additionally dismiss all claims by the plaintiff against them. We will also dismiss the complaint as to Chief Mooney and the cross-claim by Ohio Medical Products against Chief Mooney.

The first issue which we must address is the failure of the plaintiff and the defendant Ohio Medical Products to serve Chief Mooney with process. The plaintiff filed the complaint on April 18, 1979, and the summons returned on May 1, 1979 stated that Chief Mooney had not been served. The answer of the Township and the other police officers, which was filed on May 4, 1979, stated that Chief Mooney had retired and moved to Florida. The answer also provided the Florida address of Chief Mooney. Ohio Medical Products filed its answer and cross-claim on February 28, 1980.

Pursuant to Fed.R.Civ.P. 41(b), a court may dismiss a claim for failure to prosecute. Since the Federal Rules of Civil Procedure do not specify a time within which process must be served, the courts, in determining whether a claim should be dismissed for failure to serve process, have looked to whether the claimant has acted diligently to obtain service of process and whether the delay in serving process has prejudiced the unserved party. *Ingram v. Kumar*, 585 F.2d 566 (2d Cir. 1978), *cert. denied*, 440 U.S. 940, 99 S.Ct. 1289, 59 L.Ed.2d 499 (1979); *H. Alpers & Associates v. Omega Precision Hand Tools, Inc.*, 62 F.R.D. 408 (E.D.Pa.1974).

The record shows that neither the plaintiff nor Ohio Medical Products has attempted to serve Chief Mooney at his Florida address despite the fact that both parties have known this address for over two years. Nor has any explanation been advanced by either party for their failure to serve Chief Mooney. It therefore appears that neither the plaintiff nor Ohio Medical Products has acted diligently in attempting to serve process on Chief Mooney. Furthermore, Chief Mooney would be prejudiced by having to defend this action now because he has not had a timely opportunity to investigate and prepare his defense to an incident which occurred more than three years ago. The Court will therefore dismiss the complaint as to Chief Mooney and the cross-claim of Ohio Medical Products against Chief Mooney. *Charles Labs, Inc. v. Banner*, 79 F.R.D. 55 (S.D.N.Y.1978); *Afshar v. Procon, Inc.*, 442 F.Supp. 887 (S.D.N.Y.1977), *aff'd mem.*, 580 F.2d 1044 (2d Cir. 1978).

In ruling upon a motion to dismiss, the Court must view all of the facts alleged in the complaint as true and construe the complaint in a light most favorable to the plaintiff, who is the non-moving party. *Mortensen v. First Federal Savings and Loan Association*, 549 F.2d 884 (3d Cir. 1977); 2A *Moore's Federal Practice* ¶ 12.08, at 2266–67 (2d ed. 1979). The complaint alleges that at approximately 4:30 p. m. on February 27,

1978, the plaintiff summoned the police to his home because his wife was unable to awake their fifteen-year old son, the decedent, who was unconscious. Officers DiJoseph and Ridge arrived at the house and shouted at the decedent for nearly ten minutes until they were able to arouse him. The decedent told the officers and the plaintiff that if they awoke him again he would kill himself. The officers conducted a search of the decedent's bedroom and confiscated certain material, including marijuana and other drugs.

The officers proceeded to handcuff the decedent and told the plaintiff that they were taking the decedent to the Township police station. They also informed the plaintiff that he and his wife could follow in their own vehicle and reassured them that they had ways of preventing suicide attempts and reviving the decedent if he did attempt suicide. The police took the decedent to the police station and locked him in a cell which had an inner door of steel bars and an outer door made of wood that had no window. The wooden door had to be opened for anyone to observe the decedent. The plaintiff alleged that Corporal Dean was responsible for the cell detention area.

The plaintiff and his wife traveled to the police station in their car. Upon their arrival at the station, they talked with Detective Panechello, who was with the juvenile squad of the police force, and asked Detective Panechello if they could see the decedent. Detective Panechello refused the request. The decedent's brother arrived at the police station approximately twenty to thirty minutes later and also talked with Detective Panechello about seeing the decedent. The decedent's brother also inquired as to the reason for not taking the decedent to the hospital which was located directly across the street. Detective Panechello responded that they were going to let the decedent "sleep it off that night" at the police station, and allow him to go home with his parents the next morning.

After several requests were made by the decedent's brother to allow him to visit the decedent, Detective Panechello took him to the cell which housed the decedent. Upon opening the wooden door, which had been completely closed and locked, they discovered the decedent hanging from a rope made of sheets on the bed in the cell. The decedent was unconscious and not breathing. Attempts were made to revive the decedent by various methods, including the use of a resuscitator sold by Ohio Medical Products. These attempts, however, were unsuccessful, and the decedent was taken to the hospital across the street, where he remained in a comatose state until he died on April 23, 1978.

The plaintiff has asserted four "causes of action" against the defendants who filed the motion to dismiss. The first cause of action alleges that the moving defendants were negligent in that they placed the decedent in an unattended cell from which they could not observe him without opening the outer door, left sheets on the bed in the cell with which he could hang himself, refused the requests of the decedent's parents and brother to have him taken to a hospital, refused to attempt to calm down the decedent, did not monitor the decedent, equipped the police station with defective resuscitation equipment, and were inadequately trained to revive the plaintiff. The plaintiff further alleges that the Township and Chief Mooney failed to properly and adequately train and supervise the other defendants in the performance of their police duties and did not have regulations and training programs for dealing with juveniles suffering from overdoses of drugs.

The second cause of action asserted by the plaintiff alleges that the moving defendants violated the Pennsylvania Juvenile Court Act of 1972 in that the decedent was not taken to the hospital for medical attention at the time of his arrest. The part of the Act upon which the plaintiff relies is codified at 42 Pa.Cons.Stat.Ann. § 6326(a)(3). The third and fourth causes of action alleged by the plaintiff are state law wrongful death and survival actions, over which the plaintiff requests the Court to assert pendent jurisdiction.

It is clear that the plaintiff's claim under section 1985(3) must be dismissed. The Supreme Court has stated that there can be no recovery under this section unless there is "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Griffin v. Breckenridge*, 403 U.S. 88, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971) (footnote omitted). The plaintiff's complaint does not allege that there was a conspiracy among the moving defendants to act in the manner they did, or that there was any racial or class-based invidiously discriminatory animus behind their actions. The plaintiff has thus failed to allege a claim upon which relief can be granted under section 1985(3).

The plaintiff's failure to state a claim for relief under section 1985(3) mandates that we dismiss his claims under section 1986 because a section 1986 violation can be predicated only upon a violation of some part of section 1985. 42 U.S.C.A. § 1986; *Rogin v. Bensalem Township*, 616 F.2d 680 (3d Cir. 1980). Furthermore, the plaintiff's claims under section 1988 will be dismissed because that section "is procedural and alone does not give rise to a cause of action." *Moor v. County of Alameda*, 411 U.S. 693, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973).

In connection with the claims of the plaintiff under the Fourth, Fifth, Eighth, and Fourteenth Amendments, an examination of the complaint discloses that he has not alleged any violation by the moving defendants of the rights secured to him by the Fourth and Fifth Amendments. The plaintiff has not alleged that the search of the decedent's room or the decedent's arrest violated the Fourth Amendment, and he has not alleged that the decedent incriminated himself in violation of the Fifth Amendment. Furthermore, the plaintiff cannot assert a violation of his Eighth Amendment rights against cruel and unusual punishment because such rights do not accrue until there is an adjudication of guilt in a criminal prosecution. *Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447

(1979); *Romeo v. Youngberg*, 644 F.2d 147, 156 n. 8 (3d Cir. 1980) (en banc).

The plaintiff also claims that the complaint alleges violations of the due process and equal protection clauses of the Fourteenth Amendment. With respect to the equal protection claim, there is no allegation that the decedent or any class of people to which the decedent belonged was being treated in a discriminatory manner by the moving defendants. Although the decedent, as an arrestee, had no rights under the cruel and unusual punishment clause of the Eighth Amendment, the due process clause of the Fourteenth Amendment protects him from "abusive treatment." *Patzig v. O'Neill*, 577 F.2d 841, 847 (3d Cir. 1978); *Bell, supra; see Romeo, supra*. In determining whether the plaintiff's due process rights were violated by the defendants' alleged neglect of the decedent while he was in their custody, decisions "applying the cruel and unusual punishment clause serve as 'useful analogies.'" *Patzig, supra*, at 847.

As previously stated, the first cause of action in the complaint alleges that the defendants were negligent, *inter alia*, in not monitoring the decedent while he was in their custody and in not being able to revive him after they discovered that he had hanged himself. In *Patzig*, which like this action dealt with the due process right of an arrestee to be free from "abusive treatment," our Third Circuit relied on *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), in determining whether the plaintiff's due process rights were violated. In *Estelle, supra*, the Supreme Court stated that a claim for relief under the cruel and unusual punishment clause of the Eighth Amendment requires an allegation of "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Id.* at 292. Our Third Circuit has stated that "the indifference must be deliberate and the actions intentional." *Hampton v. Holmesburg Prison Officials*, 546 F.2d 1077, 1081 (3d Cir. 1976).

The complaint in this action alleges only that the moving defendants were negligent. There is no allegation that the officers' actions in not monitoring the plaintiff or in not being able to revive him were intentional, that they were deliberately indifferent to the needs of the decedent at any time, or that there were any policies which were employed or acquiesced in by the defendants which showed a deliberate indifference to the decedent's needs. There was no allegation that Officers Ridge and DiJoseph, who responded to the telephone call of the plaintiff's wife, directly caused the hanging. Furthermore, the allegations in the complaint do not give rise to any set of facts from which the plaintiff could prove that the defendants acted in a deliberately indifferent manner to the needs, if any, of the decedent.

In *Patzig, supra,* the plaintiff's decedent was arrested by a Philadelphia police officer. After being placed in an unoccupied cell, she began to act "hysterically." *Id.* at 845. A police matron attempted to calm her but failed and then left her alone. Shortly thereafter the decedent was found hanging by her belt, which, in violation of police regulations, had not been taken from her. The *Patzig* Court stated that the

> police personnel may have acted negligently, perhaps even callously; but such actions do *not* amount to the "intentional conduct characterizing a constitutional infringement." . . . "More is needed than a naked averment that a tort was committed under color of state law."

*Id.* at 848. The Court will therefore dismiss the first cause of action in the complaint because it fails to allege a violation of the decedent's due process rights.[1]

In the recent decision of *Parratt v. Taylor,* —— U.S. ——, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), the Supreme Court, in an action wherein a prisoner alleged the negligent loss of his "hobby kit" by prison officials, addressed the issue of whether a section 1983 action could be maintained where the plaintiff's sole allegation was that state officials acted negligently. Justice Rehnquist, writing for the Court, stated:

> [T]he question whether an allegation of simple negligence is sufficient to state a cause of action under § 1983 is more elusive than it appears at first blush. It may well not be susceptible of a uniform answer across the entire spectrum of conceivable constitutional violations which might be the subject of a § 1983 action.
>
> . . . .
>
> Accordingly, in any § 1983 action the initial inquiry must focus on whether the two essential elements to a § 1983 action are present: (1) whether the conduct complained of was committed by a person acting under color of state law; and (2) whether this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States.

*Id.* at 1912–13. Justice Rehnquist reasoned that the plaintiff's claim, which was based on the due process clause of the Fourteenth Amendment, must be resolved by focusing

> on whether the respondent has suffered a deprivation of property without due process of law. In particular, we must decide whether the tort remedies which the State of Nebraska provides as a means of redress for property deprivations satisfies the requirements of procedural due process.

*Id.* at 1914. The Court held that the tort remedies provided to the plaintiff by the state of Nebraska satisfied the requirements of the due process clause, and thus the plaintiff's Fourteenth Amendment rights had not been violated.

The *Parratt* Court pointed out that the plaintiff's claims

---

1. In light of our disposition of the plaintiff's first cause of action, we need not consider the plaintiff's claim that the Township failed to adequately train or supervise the other defendant policemen in the performance of their duties, and that the Township failed to promulgate regulations or institute training programs

dealing with juveniles suffering from overdoses of drugs. *See Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Likewise, we need not consider the question of the viability of a Fourteenth Amendment action against the Township under a respondeat superior theory.

differ from the claims which were before us in *Monroe v. Pape, supra* [365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492], which involved violations of the Fourth Amendment, and the claims presented in *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), which involved alleged violations of the Eighth Amendment.

*Id.* at 1913. Justice Rehnquist's analysis in *Parratt* is applicable to this action. Although the moving defendants clearly acted under color of state law, their conduct did not amount to a deprivation of any "rights, privileges, or immunities secured by the Constitution or laws of the United States." *Id.* The plaintiff has a state court action which he has instituted against the moving defendants in the Court of Common Pleas of Montgomery County, and can proceed to prosecute his negligence claims in that state forum. Moreover, as Justice Rehnquist pointed out, the deprivation of property which occurred in *Parratt* "did not occur as a result of some established state procedure. Indeed, the deprivation occurred as a result of the unauthorized failure of agents of the State to follow established procedure." *Id.* at 1917. The complaint in this action does not allege a violation of an established state procedure, but alleges only that the moving defendants were negligent. This Court does not accept the proposition that the framers of the Constitution intended the carelessness of the defendants to be encompassed within its proscriptions. As Justice Rehnquist stated in *Parratt*:

To accept respondent's argument that the conduct of the state officials in this case constituted a violation of the Fourteenth Amendment would almost necessarily result in turning every alleged injury which may have been inflicted by a state official acting under "color of law" into a violation of the Fourteenth Amendment cognizable under § 1983. It is hard to perceive any logical stopping place to such a line of reasoning. Presumably, under this rationale any party who is involved in nothing more than an automobile accident with a state official could allege a constitutional violation under § 1983. Such reasoning "would make the Fourteenth Amendment a font of tort law to be superimposed upon whatever systems may already be administered by the states." *Paul v. Davis*, 424 U.S. 693, 701, 96 S.Ct. 1155, 1160, 47 L.Ed.2d 405. We do not think that the drafters of the Fourteenth Amendment intended the amendment to play such a role in our society.

*Id.* at 1917.

■ The second cause of action asserted by the plaintiff alleges a violation of the Pennsylvania Juvenile Court Act of 1972 in that the decedent, when he was taken into custody, was not taken by the defendant officers to a medical facility, a detention or shelter care facility, or brought before a court. Section 13(a)(3) of the Act, 11 P.S. Ann. § 50–310(a)(3),[2] provided:

A person taking a child into custody, with all reasonable speed and without first taking the child elsewhere, shall:

(3) Bring the child before the court or deliver him to a detention or shelter care facility designated by the court or to a medical facility if the child is believed to suffer from a serious physical condition or illness which requires prompt treatment. . . . Any temporary detention or questioning of the child necessary to comply with this subsection shall conform to the procedures and conditions prescribed by this act and rules of court.

The plaintiff has not alleged which of his constitutional rights were infringed by the alleged violations of the Act. However, the allegations of the complaint show that the plaintiff was not held by the defendants in violation of the Act, because detention of a juvenile at a police station on a temporary basis in order to determine the appropriate action to be taken with respect to the juvenile is not a violation of the Act. *Id.*;

---

**2.** This section was re-enacted substantially verbatim in July 1978, and is codified at 42 Pa. Cons.Stat.Ann. § 6326.

*Commonwealth v. Bey*, 249 Pa.Super. 185, 375 A.2d 1304 (1977); *In re Anderson*, 227 Pa.Super. 439, 313 A.2d 260 (1973) (two and one-half hour delay between arrest and transfer to a detention care facility was not a violation of the Act). Furthermore, assuming that the decedent's confinement at the police station was a violation of the Act, we cannot discern a violation of any of the decedent's constitutional rights by such confinement. Accordingly, the Court will dismiss the second cause of action contained in the decedent's complaint.

As previously stated, the third and fourth causes of action alleged by the plaintiff are actions under the Pennsylvania wrongful death and survival statutes, respectively. The plaintiff requests that this Court invoke its pendent jurisdiction over these causes of action. Federal courts have the power to adjudicate claims based on state law if there is a federal claim of sufficient substance to confer subject matter jurisdiction on the court. *Tully v. Mott Supermarkets, Inc.*, 540 F.2d 187, 196 (3d Cir. 1976). However, as stated in *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), if the federal claims are dismissed before trial, the state claims should also be dismissed. We shall, therefore, in the exercise of our discretion, decline to assert jurisdiction over the plaintiff's state law claims and will dismiss the third and fourth causes of action of the complaint.

For the reasons set forth in this Memorandum, the Court will dismiss the complaint as to all defendants except Ohio Medical Products. The Court will further dismiss the cross-claim of Ohio Medical Products against Chief Mooney. An appropriate order will accordingly be entered.