**Sharon MADDEN, Administratrix of the Estate of Brian Madden**

**v.**

**CITY OF MERIDEN, et al.**

**Civ. No. N–84–41.**

United States District Court,
D. Connecticut.

Feb. 8, 1985.

Theodore E. Skowronski, Skowronski & Skowronski, Derby, Conn., for plaintiff.

Marjorie Howes-Drake, Corp. Counsel, City of Meriden, Meriden, Conn., Arnold J. Bai, Karen L. Karpie, Thomas M. Germain, Bai, Pollock & Dunnigan, Bridgeport, Conn., for defendants.

## RULING ON OBJECTION TO MAGISTRATE'S DENIAL OF DEFENDANTS' MOTION TO DISMISS

ELLEN B. BURNS, District Judge.

Plaintiff Sharon Madden, as administratrix of her son Brian's estate, brought this action against the City of Meriden and two of its police officers. She alleges that the City of Meriden (City) and the two officers, Elliot Michelson and Greg Kosienski, deprived Brian of his constitutional rights by brutally beating him after his arrest, and, by their deliberate indifference to his serious physical injuries and impaired mental health, failed to prevent him from hanging himself while in custody at the Meriden police station.

The complaint is in four counts. The first count purports to state a Section 1983 claim against all defendants, the City and the individual police officers, for their deliberate indifference to Brian Madden's physical and psychological condition while confined at the police department, indifference which assertedly resulted in Brian's suicide. The plaintiff alleges that the City is liable for Brian's death because it (1) failed to properly train defendants Michelson and Kosienski to recognize the risk of self-injury presented by individuals like Brian, and (2) failed to promulgate regulations and procedures to assure the safety of pretrial detainees known to be mentally ill and presenting a risk of self-injury. The second count alleges a Section 1983 claim against the individual officers who allegedly beat and seriously injured Brian. The third count seeks to hold the City liable for the beating, asserting that the assault was part of a "pattern or course of conduct" which the City knew about and condoned. The fourth count alleges a Section 1985 conspiracy among all the defendants to deprive Brian Madden of his constitutional rights.

The defendants moved to dismiss all but the second count of the complaint for failure to state a claim upon which relief could be granted. This motion was referred to a magistrate pursuant to Rule 3 of Local Rules for United States Magistrates. The magistrate ruled that the defendants' motion should be granted in part and denied in part. He dismissed the third count against the City as being drawn too generally, and failing to satisfy the pleading requirements of *Monell v. Department of Social Services of New York*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). The fourth count was also dismissed because it is vague, superfluous and omits an essential element of § 1985. *See e.g., Ostrer v. Aronwald*, 567 F.2d 551, 553 (2d Cir.1977). The magistrate denied defendants' motion to dismiss the first count against the individual or city defendants.

Defendants filed a timely objection to the magistrate's ruling and this court has conducted a *de novo* review. Rule 2 of Local Rules for United States Magistrates. Finding that the magistrate correctly denied the defendants' motion to dismiss the suicide count against both the City and the individual police officers, the magistrate's ruling is approved and adopted for the reasons stated therein and for the additional reasons discussed below.

### I. *Facts*

For the purposes of deciding this motion to dismiss the facts will be accepted as set out in the complaint. *Hughes v. Rowe*, 449 U.S. 5, 10, 101 S.Ct. 173, 176, 66 L.Ed.2d 163 (1980) (per curiam). Absent sufficient reason to impose stricter pleading requirements, no count should be dismissed unless "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon*

*v. King & Spaulding,* —— U.S. ——, 104 S.Ct. 2229, 2233, 81 L.Ed.2d 59 (1984).

The complaint alleges the following facts. Brian Madden, age 18, was receiving inpatient psychiatric treatment at Saint Mary's Hospital in Waterbury, Connecticut, when he was taken into custody by the defendants Michelson and Kosienski. The officers knew that Brian was suffering serious psychological and emotional impairments. They also knew that Brian had previously attempted self-injury. Nevertheless, they took him from the hospital and brought him to the police station. Although they had knowledge of Brian Madden's severely diminished mental condition, the complaint claims that defendants Michelson and Kosienski brutally beat Brian while he was in the custody of the Meriden Police Department. As a result of this beating, Brian suffered a severely fractured skull, a massive and disabling concussion, hematomas and substantial bruising of the brain, severe emotional shock, great distress, trauma, pain and suffering. Rather than obtaining the necessary medical and psychiatric treatment for him, the defendants placed Brian Madden, alone, in a locked jail cell. No one could observe him because the television monitoring system was not operating. Nor was there an audio monitoring system. Although the defendants knew that Brian had previously attempted suicide, they failed to remove from him objects with which he could injure himself. They also failed to remove from the cell objects which could be used to inflict self-injury. The cell design and conditions themselves were such as to facilitate death by hanging. Tragically, Brian Madden, who had just received traumatic injuries to his brain, and who was already in a severely depressed mental condition, hanged himself. The defendants failed to observe or discover that Brian had attempted to hang himself. They also failed to take appropriate steps to prevent his death after he was discovered hanging in his cell.

## II. *The Constitutional Deprivation*

In *Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), the Supreme Court held that only "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain … proscribed by the Eighth Amendment." *Id.* at 104, 97 S.Ct. at 291 (citation omitted).

The plaintiff asserts that the defendants' actions constituted deliberate indifference to Brian Madden's needs and constitutional rights, depriving him of the right to be free of cruel and unusual punishment secured by the Eighth and Fourteenth Amendments.

 The defendants assert that plaintiff's claim must be dismissed because she has failed to show any violation of an interest protected by the Constitution. The defendants correctly assert that the Eighth Amendment does not apply to Brian Madden because he was a pretrial detainee. The Eighth Amendment's protection against "cruel and unusual punishment" applies only to prisoners incarcerated as a result of a criminal conviction. *Ingraham v. Wright,* 430 U.S. 651, 668–671, 97 S.Ct. 1401, 1410–1412, 51 L.Ed.2d 711 (1977). *Bell v. Wolfish,* 441 U.S. 520, 535 n. 16, 99 S.Ct. 1861, 1872 n. 16, 60 L.Ed.2d 447 (1979). However Brian Madden had an equivalent substantive right under the due process clause of the Fourteenth Amendment which protects pretrial detainees from "punishment" prior to an adjudication of guilt. *Bell, supra,* at 535 n. 16, 99 S.Ct. at 1872 n. 16. The due process rights of a pretrial detainee under the Fourteenth Amendment are at least as great as the Eighth Amendment protections available to a convicted prisoner. *Revere v. Massachusetts General Hospital,* 463 U.S. 239, ——, 103 S.Ct. 2979, 2981, 77 L.Ed.2d 605 (1983). The Second Circuit, in accordance with the directive of the Supreme Court, has held that "a detainee is entitled to protection from cruel and unusual punishment as a matter of due process …" *Rhem v. Malcolm,* 507 F.2d 333, 337 (2d Cir.1974). Therefore, Eighth Amendment standards can be used by analogy to determine the minimum substantive rights of a pretrial

detainee under the due process clause of the Fourteenth Amendment. *See Norris v. Frame*, 585 F.2d 1183, 1186–87 (3d Cir. 1978); *see also Patzig v. O'Neil*, 577 F.2d 841, 847 (3d Cir.1978).

█ The magistrate ruled that the first count alleged facts sufficient to state a claimed violation of the Eighth Amendment. The court agrees that that count, viewed as a whole, does indeed allege sufficient facts to establish such a claim. Brian, taken from a hospital where he was receiving psychiatric treatment, was brutally beaten and severely injured. Rather than receiving medical treatment for these injuries, Brian was confined in a jail cell without adequate surveillance, and without the removal of implements enabling him to take his own life. All of this was done with knowledge of Brian's past tendency toward suicide. These facts are sufficient to establish an Eighth Amendment violation. *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); *Guglielmoni v. Alexander*, 583 F.Supp. 821 (D.Conn.1984) (summary judgment denied in § 1983 case where record permitted inference that prison officials had notice of prisoner's suicidal tendencies and did not take reasonable steps to provide treatment or prevent suicide). Such conduct, which would be a deprivation of Brian's Eighth Amendment rights had he been confined after an adjudication of guilt, *Estelle v. Gamble, supra,* was certainly a deprivation of his Fourteenth Amendment right to liberty when confined as a pre-trial detainee. *See Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979).

## III. *The Due Process Violation*

### A. *Parratt v. Taylor*

The defendants concede that the alleged actions of the defendants may have deprived Brian Madden of a life, liberty, or property interest. They argue, however, that the due process clause of the Fourteenth Amendment does not protect against every deprivation of a life, liberty, or property interest, but only such deprivations as are without "due process of law".

*Parratt v. Taylor*, 451 U.S. 527, 537, 101 S.Ct. 1908, 1914, 68 L.Ed.2d 420 (1981), *Baker v. McCollan*, 443 U.S. 137, 145, 99 S.Ct. 2689, 2695, 61 L.Ed.2d 433 (1979).

The defendants assert that, under the principles of *Parratt*, the availability of an adequate post-deprivation remedy under state law provides plaintiff's decedent with the due process of law secured to him by the Fourteenth Amendment and that Connecticut provides an adequate post-deprivation remedy for any deprivation of an interest of plaintiff's decedent through its common law tort procedures. They point out that, in fact, plaintiff has brought an action against defendants, *Madden v. Meriden, et al,* Docket No. CV 82–0063328S, which is presently pending in the Superior Court for the District of New Haven at Waterbury, to recover against the defendants under state law.

In *Parratt v. Taylor, supra,* the plaintiff alleged that he was deprived of property without due process of law when prison officials negligently lost a hobby kit worth $23.50 that the plaintiff had ordered through the mail. The Supreme Court agreed that the plaintiff had been deprived of property within the meaning of the Fourteenth Amendment, *Parratt, supra,* 451 U.S., at 536–537, 101 S.Ct. at 1913–1914, reasoning that, because a pre-deprivation hearing is not feasible when deprivations of property are effected through random and unauthorized conduct of a state employee, the availability of an adequate post-deprivation remedy under state law negates the contention that the deprivation is without due process of law. *Id.* at 540–44, 101 S.Ct. at 1915–17. In reaching this conclusion, however, the court indicated that the availability of a post-deprivation remedy would not apply to alleged violations of *substantive* constitutional rights. Justice Rehnquist, writing for the majority in *Parratt* stated:

"[The plaintiff's] claims differ from the claims which were before us in *Monroe v. Pape*, [365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961)], which involved violations of the Fourth Amendment, and

the claims presented in *Estelle v. Gamble*, 429 U.S. 97 [97 S.Ct. 285, 50 L.Ed.2d 251] (1976), which involved alleged violations of the Eighth Amendment. Both of these Amendments have been held applicable to the states by virtue of the Fourteenth Amendment. [The plaintiff] here refers to no other right, privilege or immunity secured by the Constitution or federal laws other than the Due Process Clause of the Fourteenth Amendment simpliciter."

*Id.* at 536, 101 S.Ct. at 1913.

In *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), the plaintiff alleged that municipal police officers violated his rights under the Fourth Amendment. The Court explicitly rejected the defendant's argument that because state law proscribed the defendant's conduct, the plaintiff could not recover under § 1983. The *Monroe* court stated:

It is no answer that the State has a law which if enforced would give relief. The federal remedy is supplementary to the state remedy, and the latter need not be first sought and refused before the federal one is invoked.

*Id.* at 183, 81 S.Ct. at 482.

Although *Parratt* dealt with negligent actions on the part of state officials, in *Hudson v. Palmer*, —— U.S. ——, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984), the Court extended the reasoning of *Parratt* to apply to intentional as well as negligent deprivations of property. The court stated:

We can discern no logical distinction between negligent and intentional deprivations of property insofar as the 'practicability' of affording post-deprivation process is concerned.... Accordingly, we conclude that an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available.

*Id.* at ——, 104 S.Ct. at 3203–3204.

The Court carefully limited its holding and discussion to procedural due process.

Justice Stevens, concurring in this part of the opinion with three other justices, stated:

I do not understand the Court's holding to apply to conduct that violates a substantive constitutional right—actions governmental officials may not take no matter what procedural protections accompany them ... or to cases in which it is contended that the established prison procedures themselves create an unusual risk that prisoners will be unjustifiably deprived of their property.

*Id.* at —— n. 4, 104 S.Ct. at 3208 n. 4 (citations omitted).

However, the Court has not squarely faced whether *Parratt* should apply to deprivations of life or liberty. In concurring with the plurality in *Parratt,* Justices Blackmun and White made clear their understanding that the decision did not apply to deprivations of life or liberty.

The district courts and circuit courts that have addressed the issue have split on the question whether *Parratt* applies to deprivations of life or liberty interests. Some circuits have held that *Parratt* does apply to deprivations of life or liberty interests. *See e.g. Rutledge v. Arizona Board of Regents,* 660 F.2d 1345 (9th Cir.1981), *aff'd. on other grounds sub. nom., Kush v. Rutledge,* 460 U.S. 719, 103 S.Ct. 1483, 75 L.Ed.2d 413 (1983), (under *Parratt,* plaintiff must show that post-deprivation tort remedies under Arizona law were deficient in order to state a valid Section 1983 claim for intentional assault and battery); *Thibodeaux v. Bordelon,* 740 F.2d 329 (5th Cir. 1984), ("Just as there is no reason to distinguish intentional from negligent deprivations, there is no reason to distinguish between liberty interests and property interests" *Id.* at 336–337); *Gilmere v. City of Atlanta,* 737 F.2d 894 (11th Cir.1984) (gross negligence not a violation of a constitutional right where post-deprivation remedies satisfied due process clause of the Fourteenth Amendment; *Parratt* applicable to intentional deprivations of liberty); *Jackson v. City of Joliet,* 715 F.2d 1200 (7th Cir.1983) (negligent deprivation of life

does not give rise to deprivation of due process if state remedy available; gross negligence not standard for Section 1983), *cert. denied* — U.S. —, 104 S.Ct. 1325, 79 L.Ed.2d 720 (1984) (*see* White, J. dissenting from the denial of *certiorari*); *State Bank of St. Charles v. Camic,* 712 F.2d 1140 (7th Cir.1983) (claim based on Fourteenth Amendment was precluded on ground that Illinois wrongful death statute may provide recovery for one who sues on behalf of estate of person who committed suicide; Eighth Amendment right to be protected from suicide was not abrogated by officers who took reasonable precautions which precluded finding of deliberate indifference.) *cert. denied* — U.S. —. 104 S.Ct. 491, 78 L.Ed.2d 686 (1983). *Meshkov v. Abington Township,* 517 F.Supp. 1280, 1284 (E.D.Pa.1981);[1] *Dodd v. City of Norwich,* — F.Supp. — No. H–82–590, memorandum of decision (Blumenfeld, J.), (D.C.Conn. Sept. 13, 1984) (plaintiff's decedent shot while being handcuffed had adequate remedy under Connecticut negligence laws; gross negligence not sufficient to establish violation of plaintiff's decedent's constitutional rights). *Contra, Wilson v. Beebe,* 743 F.2d 342, 348 (6th Cir.1984) (*Parratt* not applicable to deprivations of life or liberty interests.)

Assuming, *arguendo,* that *Parratt* may apply when there is a deprivation of life or liberty without procedural due process, *cf. Ingraham v. Wright,* 430 U.S. 651, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977) (tort remedy adequate for in-school corporal punishment), the Court's approval of *Monroe v. Pape, supra,* indicates that *Parratt* would not apply to the violation of a substantive constitutional right. *See Wilson v. Beebe, supra,* at 350. ("As *Parratt v. Taylor* and other cases have shown, not every tort

committed under color of law is a constitutional question. However, where the tort committed violates a substantive due process right and shocks the conscience of the court, section 1983 liability may also be found ..."); *Augustine v. Doe,* 740 F.2d 322 (5th Cir.1984) (*Parratt* inapplicable to alleged violations of substantive rights, citing cases, *Id.* at 326). *See also, Schiller v. Strangis,* 540 F.Supp. 605 (D.Mass.1982). Therefore, it becomes necessary to examine the complaint to determine if a substantive due process violation is alleged.

### B. *Procedural v. Substantive Due Process*

██ Unlike procedural due process, which permits a state to deprive a person of life, liberty or property when it provides a procedural remedy, substantive due process imposes limits on what a state may do regardless of what process is provided. *See Rochin v. California,* 342 U.S. 165, 173, 72 S.Ct. 205, 210, 96 L.Ed. 183 (1952). It is a source of rights which may not be taken away under any circumstances. Thus, the availability of a state remedy would not bar a section 1983 action to vindicate the violation of a substantive constitutional right. *Monroe v. Pape, supra. See Barnier v. Szentmiklosi,* 565 F.Supp. 869 (E.D.Mich.1983). *See also Brandon v. Allen,* 719 F.2d 151 (6th Cir.1983) (plaintiff who alleged his constitutional rights were violated by assault and battery committed by police officer had substantive due process right to enjoy the security of life and limb which stated a claim under Section 1983), *reversed on other grounds,* — U.S. —, 105 S.Ct. 873, 83 L.Ed.2d 878 (1984).

In *Rochin v. California, supra,* Justice Frankfurter seemed to establish a standard that conduct that "shocks the conscience"

---

**1.** In *Meshkov,* the plaintiff brought a civil rights action against the defendants for allegedly allowing his son to hang himself in a detention cell. The court held that the complaint failed to allege a cause of action under the due process clause of the Fourteenth Amendment in light of the fact that the complaint alleged only that defendants were negligent. There was no allegation that the police officers' actions in not monitoring the plaintiff's son or not being able

to revive him after they found him hanging were intentional, that they were deliberately indifferent to the needs of the plaintiff's son, or that there were any policies which were employed or acquiesced in by the defendants which showed a deliberate indifference to the needs of the plaintiff's son, and there was no allegation that the police officers who took the plaintiff's son to jail directly caused the hanging. *Id.* at 1284–85.

or "offends the community's sense of fair play and decency" is prohibited by the due process clause of the Fourteenth Amendment. In *Rochin*, the court explained the underlying theory of substantive due process:

Regard for the requirements of the due process clause "inescapably imposes upon this court an exercise of judgment upon the whole course of the proceedings in order to ascertain whether they offend those canons of decency and fairness which express the notions of justice of English-speaking peoples even toward those charged with the most heinous offenses" *Malinski v. New York*, 324 U.S. 401, 416–417 [65 S.Ct. 781, 788–789, 89 L.Ed. 1029] (1945). These standards of justice are not authoritatively formulated anywhere as though they were specifics. Due process of law is a summarized constitutional guarantee of respect for those personal immunities which, as Mr. Justice Cardozo twice wrote for the Court, are "so rooted in the traditions and conscience of our people as to be ranked as fundamental", *Snyder v. Massachusetts*, 291 U.S. 97, 105 [54 S.Ct. 330, 332, 78 L.Ed. 674] (1934), or are "implicit in the concept of ordered liberty." *Palko v. Connecticut*, 302 U.S. 319, 325 [58 S.Ct. 149, 152, 82 L.Ed. 288] (1937).

*Rochin, supra*, 342 U.S., at 169, 72 S.Ct. at 208.

Because the line dividing "procedural due process" from "substantive due process" is not always clear, it may be difficult in some cases to determine which is the proper characterization of the plaintiff's claim. A difficulty in deciding this issue arises from the lack of clarity in precedents concerning what standards courts should use in evaluating these types of Fourteenth Amendment claims. It may be argued that not every violation of an individual's bodily security and freedom (even though under color of state law) invades rights protected by the Fourteenth Amendment. *See e.g. Baker v. McCollan*, 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979) (false imprisonment under state law not a violation of the Fourteenth Amend-

ment); *see also, Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976) (defamation under state law not a violation of the Fourteenth Amendment). These cases imply some minimum standard of severity of the violation of bodily security and freedom as a prerequisite to the conclusion that a violation of the Fourteenth Amendment has occurred.

This is in accordance with the line of cases in our own Second Circuit. In *Johnson v. Glick*, 481 F.2d 1028 (2d Cir.1973), the court articulated a set of factors to help determine when a substantive constitutional violation has occurred. Referring to the *Rochin* "conduct that shocks the conscience" test, Judge Friendly noted that, although it is not one that can be applied by a computer, the standard gains added content from other language in the *Rochin* opinion. The acts must do more than "offend some fastidious squeamishness or private sentimentalism about combatting crime too energetically"; they must be such as "to offend even hardened sensibilities," or constitute force that is "brutal" and "offensive to human dignity." *Johnson v. Glick, supra*, at 1033 n. 6. Judge Friendly, in words frequently quoted from his opinion, wrote:

Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights. In determining whether the constitutional line has been crossed, a court must look to such factors as the need for the application of force, the relationship between the need and the amount of force that was used, the extent of the injury inflicted, and whether the force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.

*Id.* at 1033.

■ The allegations in the case before the court arguably allege facts that shock the conscience. The second count alleges that plaintiff's decedent, Brian Madden, while in the custody of the Meriden police,

was brutally beaten. The beating is characterized as willful, wanton, deliberate, malicious, and without any legal justification. As a result of the beating, Brian Madden suffered the following injuries: a severely fractured skull, a massive and disabling concussion, hematomas and substantial bruising of the brain, severe emotional shock, and great distress, trauma, pain and suffering. Thereafter, according to the first count of the complaint, Brian Madden was placed alone in a jail cell, with deliberate indifference to his medical needs, and with actual knowledge of his psychological problems and previous attempts at self-injury, was allowed to hang himself. The court finds the allegations of the beating and suicide counts to be so closely related in both time and substance as to be a part of the same *res gestae*. Taking this view, and taking the allegations of the complaint as true, *Hughes v. Rowe, supra,* the first count of the complaint is sufficient to state a § 1983 claim under the Fourteenth Amendment against both defendant Michelson and defendant Kosienski. The magistrate conceded that a more developed evidentiary record might show that defendants' actions did not violate Brian Madden's constitutional rights, *see, e.g., State Bank of St. Charles v. Camic,* 712 F.2d 1140 (7th Cir.1983), *cert. denied,* — U.S. —, 104 S.Ct. 491, 78 L.Ed.2d 686 (1983),[2] but it cannot be said on the very face of the complaint that plaintiff could prove no set of facts that would entitle her to relief against the individual defendants. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102–103, 2 L.Ed.2d 80 (1957).

**2.** In *State Bank of St. Charles v. Camic,* an administrator brought a § 1983 action on behalf of individual who committed suicide in a city jail. The court granted summary judgment for all the defendants, the City and the individual police officers. This case is distinguishable on the facts from the circumstances which caused the death of Brian Madden. In *Camic* the defendants had no knowledge that plaintiff's decedent was a suicide risk, and none that he was an unusually high suicide risk. Also defendants in *Camic* took reasonable precautions to guard against self-infliction of harm by removing dangerous objects from plaintiff's decedent. The Seventh Circuit held in *Camic* that the existence

### IV. *Municipal Liability for the Suicide*

■ The defendants have also challenged the magistrate's denial of the City of Meriden's motion to dismiss the first count with respect to the City. The City asserts that the first count fails to state a claim of municipal liability under *Monell v. Department of Social Services of the City of New York,* 436 U.S. 658, 691–92, 98 S.Ct. 2018, 2036–37. The court agrees with the magistrate that the first count successfully alleges a *Monell* claim.

Although *Monell* teaches that a municipality cannot be liable for the acts of its agents under a theory of *respondeat superior,* the municipality may be liable for its own acts or omissions which amount to a "deliberate indifference" to a person's constitutional rights. *See Owens v. Haas,* 601 F.2d 1242, 1246 (2d Cir.), *cert. denied,* 444 U.S. 980, 100 S.Ct. 483, 62 L.Ed.2d 407 (1979). The first count alleges acts or omissions of sufficient specificity to hold the City liable under § 1983. The City is alleged to have failed to provide training to its police officers to deal with suicidal detainees; that it failed to provide regulations and procedures to assure the safety of detainees with known histories of self-injury; and that it failed to maintain prison monitoring equipment in operating condition. These are all specific and readily verifiable charges which, if true, would allow a finding that the City was grossly negligent or showed a deliberate indifference to the constitutional rights of severely emotionally impaired detainees. The first count therefore successfully states a § 1983 claim against the City of Meriden.[3]

of a state remedy did not foreclose a § 1983 action alleging a deprivation of a substantive constitutional guarantee.

**3.** The magistrate also was correct in his ruling that plaintiff's third count failed to adequately allege a § 1983 claim. Unlike the first count, the third count contains vague and conclusory "pattern or course of conduct" language. This claim does not make out a claim similar to the well supported and clearly focused claim of deliberate indifference that was permitted in *Owens v. Haas, supra.* Rather, the claim is of the unsupported "boilerplate" variety rejected

It is also apparent that the reasoning of *Parratt v. Taylor* does not apply to bar the § 1983 claim against the City. As was noted by Justice Stevens in his concurring opinion in *Hudson v. Palmer*, — U.S. at —, n. 4, 104 S.Ct. at 3208, n. 4, *Parratt* does not apply when established procedures themselves create a substantial risk of a constitutional deprivation. *Parratt* should be properly limited to those situations in which the deprivation occurs as the result of a random or unauthorized act which precludes the availability of a predeprivation remedy. 451 U.S. at 541, 101 S.Ct. at 1916; *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982); *Holmes v. Ward*, 566 F.Supp. 863 (E.D.N.Y.1983). *See also Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). Furthermore, the complaint against the City of Meriden is directed toward actions taken in its governmental rather than ministerial capacity. The City is immune from suit for its actions in carrying out the ordinary functions of government. Conn.Gen.Stat. § 7–465. Therefore, there is no post-deprivation remedy available against the City in state court. The lack of a post-deprivation remedy makes the reasoning of *Parratt* inapplicable to the § 1983 claim against the City.

## CONCLUSION

For the reasons stated in the magistrate's ruling, and for the additional reasons set forth above, the magistrate's ruling is approved, affirmed, and adopted. Defendants' motion to dismiss is denied as to the complaint's first count and granted as to the third and fourth counts.

As the court concluded in *Augustine v. Doe*, 740 F.2d 322, 329 (5th Cir.1984), "*Parratt v. Taylor* is not a magic wand that can make any § 1983 action resembling a tort suit disappear into thin air. *Parratt* applies only when the plaintiff alleges a deprivation of procedural due process; it is irrelevant when the plaintiff has alleged some substantive constitutional proscription."

by this court in *Smith v. Ambrogio*, 456 F.Supp.

The defendants' objection is accordingly overruled and the magistrate's ruling is adopted.

SO ORDERED.