DOLORES MIGA, individually and as administratrix,[1] *vs.*
CITY OF HOLYOKE & others.[2]

Hampden.    May 5, 1986. — September 2, 1986.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, & LYNCH, JJ.

*Civil Rights,* Availability of remedy. *Damages,* Civil rights, Punitive.
*Police,* Municipality's liability. *Municipal Corporations,* Police, Liabil-
ity for tort, Duty to prevent harm. *Due Process of Law,* Substantive
rights, Police custody. *Constitutional Law,* Cruel and unusual punish-
ment.

In an action against a city, its chief of police, and various police officers,
    seeking recovery under 42 U.S.C § 1983 (1976) for the deprivation of
    the plaintiff's decedent's civil rights, arising from the suicide of the
    decedent by hanging while in the defendants' protective custody, there
    was sufficient evidence to permit the jury to find that the defendant
    police officers' conduct in failing to follow departmental rules relating
    to the care and monitoring of unconscious, intoxicated, and suicidal
    persons in their custody, in responding with profanity and racial insults
    to the efforts of other prisoners to summon help when the decedent was
    making preparations to hang herself, and in blatantly disregarding the
    warnings of other prisoners, was more than mere negligence, that it was
    shocking to the conscience, and that it constituted deliberate indifference
    to the serious needs of a detainee in violation of her rights to substantive
    due process of law under the Fourteenth Amendment to the United States
    Constitution. [348-352]
Where the plaintiff in an action against a city, its chief of police, and various
    police officers, alleged a violation of the right of her decedent to substan-

---

[1] Of the estate of Sandra J. Smigiel.

[2] Joseph Dudek and John J. McMullan. The record indicates in a few
places that McMullan's first name is "Gerald," but we leave that nicety to
the discretion of the trial judge, if the matter now requires amendment. The
plaintiff's amended complaint named several other individual defendants
who, like defendants Dudek and McMullan, were employed by the Holyoke
police department. The plaintiff does not appeal from the allowance of
motions for directed verdicts on all counts for Harold F. Skelton, Alan G.
Fletcher, and Russell Paquette. In addition, the plaintiff does not appeal
from directed verdicts and jury verdicts which disposed of all claims in favor
of defendants James Sullivan, Russell Labbe, Jean King, and Dennis Egan.

tive due process of law under the Fourteenth Amendment to the United States Constitution, arising from the suicide-by-hanging of the decedent while in the defendants' protective custody, the plaintiff's claim under 42 U.S.C. § 1983 (1976) seeking recovery for the deprivation of the decedent's civil rights was not barred by the availability of a State remedy for wrongful death under G. L. c. 229, § 2. [352-355]

In an action against a city, its chief of police, and various police officers, seeking recovery for the deprivation of the plaintiff's decedent's civil rights under 42 U.S.C. § 1983 (1976), arising from the suicide-by-hanging of the decedent while in the defendants' protective custody, the judge did not err in submitting the issue of punitive damages to the jury, where there was evidence of reprehensible conduct on the part of the officers during the decedent's confinement, shocking to the conscience and offensive to standards of common decency, which clearly rose to the threshold level of "callous disregard" for the decedent's substantive due process rights under the Fourteenth Amendment to the United States Constitution. [355-356]


CIVIL ACTION commenced in the Superior Court Department on December 31, 1981.

The case was heard by *Elizabeth A. Porada,* J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Harold F. Brunault,* City Solicitor (*Harry Zarrow* with him) for the defendants.

*Harold Resnic* for the plaintiff.

HENNESSEY, C.J. The city of Holyoke and two of its police officers, Joseph Dudek and John J. McMullan, appeal from Superior Court jury verdicts awarding compensatory and punitive damages for the suicide-by-hanging of the plaintiff's decedent while in the defendants' protective custody.

The plaintiff, the mother of the decedent, brought suit against the city of Holyoke, its chief of police, and various police officers, seeking recovery for wrongful death, G. L. c. 229, § 2 (1984 ed.), and for the deprivation of the decedent's civil rights, 42 U.S.C. § 1983 (1976).[3] Motions by the defendants for

---

[3] The plaintiff's complaint also stated claims for violations of the Massachusetts Civil Rights Act, G. L. c. 12, § 11 (1984 ed.), and for intentional infliction of emotional distress. Directed verdicts were allowed in favor of all defendants on each of these State law claims.

directed verdicts and judgments notwithstanding the verdicts were made and denied. On special questions, the jury found that the city was responsible for the death of the plaintiff's decedent and awarded $20,000 damages for wrongful death and $2,100 for funeral and burial expenses. In addition, the jury found that the city was sixty per cent negligent and, therefore, the damage awards were reduced to $12,000 and $1,260, respectively. The jury also found defendants Dudek and McMullan liable under 42 U.S.C. § 1983 (1982), and assessed compensatory damages of $20,000 and punitive damages of $50,000 against each of these defendants.[4]

On appeal, the defendants challenge the denial of their motions for directed verdicts and judgments notwithstanding the verdicts, and the damage awards. Specifically, the defendants contend that the evidence was not legally sufficient to establish a constitutional violation under § 1983, that the existence of an adequate State remedy foreclosed the right to sue for violation of civil rights under § 1983, and that the issue of punitive damages should not have been submitted to the jury.[5] We transferred the case here on our own motion and affirm the judgments.

---

[4] In the defendants' brief, only three pages are devoted to argument on the issues presented for appeal. We found the brief woefully inadequate in all respects and at several points in this opinion are compelled to make mention of specific problems caused by this inadequacy.

The defendants state in their brief that the judge awarded attorney's fees and that they appeal from that award. The briefs and record do not reflect the amount of the award and the record does not include the defendants' notice of appeal, although the filing of the notice is reflected on the Superior Court docket entries. In view of these omissions and the one-sentence mention of the issue in the defendants' brief, we conclude that the defendants' treatment of this issue does not rise to the level of appellate argument as required by Mass. R. A. P. 16 (a) (4), as amended, 367 Mass. 919 (1975). See *Langlitz* v. *Board of Registration of Chiropractors,* 396 Mass. 374, 376 n.2 (1985).

[5] In their statement of the issues presented and throughout their brief, the defendants appear to address only matters relating to the judgments against the individual defendants on the § 1983 claims. The defendants in their conclusion, however, also purport to challenge the entry of judgment against the city in the amount of $12,000 for compensatory damages on the plaintiff's wrongful death claim under G. L. c. 229, § 2. This one-sentence challenge to the judgment against the city fails to meet the standards for appellate

We summarize the facts. The decedent, Sandra Smigiel (Sandra), had poor mental health and was under care for mental illness continuously from 1974 until her death in September, 1979. She was a certified nurse's aide. Sandra married Daniel Smigiel (Daniel) in February, 1978.

On September 10, 1979, Sandra went to the Holyoke police station and informed a police detective that her husband was threatening to kill himself with a gun. As the detective accompanied Sandra to her home, she informed him that she had a drinking problem and that earlier on the same evening she had been a patient at a local detoxification center. When they arrived at Sandra's residence, the police disarmed Daniel. Daniel then advised the detective to be careful with Sandra, told the detective that Sandra had suicidal tendencies and that she had been hospitalized for that reason. The detective wrote a report regarding Sandra, which was read and signed by Lieutenant James Sullivan of the Holyoke police department.

Eleven days later, on September 21, 1979, Sandra tried unsuccessfully to obtain a drink from a drinking establishment as it was closing. The proprietor followed as Sandra drove away from the bar and observed that Sandra's car was weaving as it proceeded along the road. When Sandra pulled over to the side of the road, the proprietor stopped behind her. He then hailed a passing cruiser, occupied by Lieutenant Sullivan and another officer.

The police officers asked Sandra to get out of her car. She did not respond. The officers turned off the ignition and removed Sandra from the car. She was unable to stand or walk by herself, her breath smelled of alcohol and her speech was slurred. Sandra was able to tell the officers her name and the street where she lived. The officers then drove her there, but went to the wrong house and were told that she did not live at that address. The officers made no attempt to search her pocketbook or otherwise determine her correct address, but instead radioed for another cruiser to take Sandra to the police

argument set forth in Mass. R. A. P. 16 (a) (4). We decline, therefore, to consider the defendants' perfunctory claim of error regarding the wrongful death judgment against the city.

station. On the way to the police station in the second cruiser, Sandra lapsed into unconsciousness. An officer carried her into the police station, but made no attempt to obtain medical attention for her.

The commanding officer at the police station was defendant John J. McMullan, who had been a police officer for twenty-eight years. He had been off-duty, but had been called to the station to administer a breathalyzer test. McMullan remained while Lieutenant Sullivan, who otherwise would have been commanding officer, was out of the station. The defendant Joseph Dudek was the house officer at the police station on the midnight to 8 A.M. shift. He was responsible for checking on prisoners, including female prisoners, although in practice a female dispatcher usually checked on female prisoners.

There was testimony that, at the time Sandra was taken into protective custody, rules and regulations promulgated by the chief of police required: that an attempt be made to bring such a person home prior to calling the treatment center; that at no time should an unconscious person be placed in a cell except on orders of a physician; and that prisoners with known suicidal tendencies be checked at least every half hour.

Sandra arrived at the police station at 3 A.M. McMullan observed her to be in a "very drunken condition," and filled out a protective custody form with her name and address and her husband's name. McMullan made no attempt to communicate with Sandra's husband. There was evidence that McMullan did not notify the nearest detoxification center. McMullan took no action to obtain proper care and treatment for Sandra even though she was obviously intoxicated and had lapsed into unconsciousness periodically since being taken into custody by the police. There was evidence that McMullan knew that his failure to take these actions was contrary to department regulations. Shortly thereafter, Lieutenant Sullivan returned to the station and McMullan departed.

After Sandra was booked, she again lapsed into unconsciousness. Two other officers carried her, unconscious, downstairs to a cell. Because she thrashed about when they attempted to place her on a bench, they placed her on the concrete floor.

An officer removed her belt, eyeglasses, and necklace, and checked her pockets.

Subsequently, Sandra began banging on the cell wall, asking for belts or shoelaces from other prisoners, and stating that she would commit suicide with her shirt. A woman in another cell began calling for the police to come down to the cell area to help with the situation. There was evidence that a police officer responded from the stairs with an obscene, racial epithet and that Dudek was the police officer who uttered the response. The woman yelled that Sandra was trying to kill herself; other prisoners also yelled for help. No one came. Defendant Dudek heard the yelling, but made no attempt to find out what was happening. At one point Dudek testified that he told the prisoners to quiet down. At 6 A.M. Sandra's body was discovered hanging from the bars of her cell.

1. *Sufficiency of the Evidence Under 42 U.S.C. § 1983 (1976).*

In evaluating the judge's denial of the defendants' motions for directed verdicts, and for judgments notwithstanding the verdicts on the § 1983 claims, we view the evidence in the light most favorable to the plaintiff.[6] *Michnik-Zilberman* v. *Gordon's Liquor, Inc.,* 390 Mass. 6, 7 n.1 (1983). *Uloth* v. *City Tank Corp.,* 376 Mass. 874, 876 (1978). We must determine whether "anywhere in the evidence, from whatever source derived, any combination of circumstances could be found from which a reasonable inference could be drawn in favor of the plaintiff." *Poirier* v. *Plymouth,* 374 Mass. 206, 212 (1978), quoting *Raunela* v. *Hertz Corp.,* 361 Mass. 341, 343 (1972). "That the inferences be reasonable requires that they be based on 'probabilities rather than possibilities' and not the result of 'mere speculation and conjecture.'" *Poirier* v. *Plymouth, supra,* quoting *Alholm* v. *Wareham,* 371 Mass. 621, 627 (1976).

---

[6] In reviewing the denial of the defendants' motions for directed verdict and judgment notwithstanding the verdict, we employ the same standard. *Curtiss-Wright Corp.* v. *Edel-Brown Tool & Die Co.,* 381 Mass. 1, 3 (1980); *D'Annolfo* v. *Stoneham Hous. Auth.,* 375 Mass. 650, 657-658 (1978).

To establish a claim based on 42 U.S.C. § 1983 (1976),[7] a plaintiff must show that the conduct complained of was committed by a person acting under color of State law and that the conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States. *Parratt* v. *Taylor,* 451 U.S. 527, 535 (1981). *Temple* v. *Marlborough Div. of the Dist. Court Dep't,* 395 Mass. 117, 122 (1985). There is no question that defendants Dudek and McMullan were acting under color of State law when Sandra was in the custody of the Holyoke police. Thus, the focus of our inquiry is on whether the defendants violated a right secured by the Constitution or laws of the United States.

The plaintiff claims that the conduct of Officers Dudek and McMullan in placing Sandra in a cell unattended when she was obviously intoxicated and unconscious, in failing to attempt to transfer her to a detoxification facility, and in failing to check her every half hour, in violation of the department rules, resulted in a violation of Sandra's constitutional rights. Further, she alleges that those acts, along with the failure of Dudek to respond to the cries of other prisoners for help, constituted deliberate indifference to serious medical needs of a person in police custody. We conclude that there was sufficient evidence to permit a jury to find a violation of § 1983.

In *Estelle* v. *Gamble,* 429 U.S. 97 (1976), the Supreme Court of the United States held that deliberate indifference to the serious illness or injury of prisoners constitutes a violation of the Eighth Amendment to the United States Constitution and states a cause of action under § 1983.[8] *Id.* at 104-105. Mere

---

[7] Section 1983 provides: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia."

[8] The strictures of the Eighth Amendment were made applicable to the States by the Fourteenth Amendment. *Robinson* v. *California,* 370 U.S.

negligent or inadvertent failure to provide medical care to prisoners does not, however, rise to the level of a constitutional violation. *Id.* at 105. Moreover, Eighth Amendment scrutiny of the treatment of persons in State custody is appropriate only after a State has complied with the constitutional requirements associated with criminal prosecutions. *Ingraham* v. *Wright,* 430 U.S. 651, 671 n.40 (1977). A pretrial detainee, like Sandra, is not protected by the prohibitions against cruel and unusual punishment found in the Eighth Amendment. *Revere* v. *Massachusetts Gen. Hosp.,* 463 U.S. 239, 244 (1983). *Bell* v. *Wolfish,* 441 U.S. 520, 536-537 (1979). Rather, "[w]here the State seeks to impose punishment without [a constitutional] adjudication [of guilt], the pertinent constitutional guarantee is the Due Process Clause of the Fourteenth Amendment." *Ingraham* v. *Wright, supra. Revere* v. *Massachusetts Gen. Hosp., supra.*

The substantive protections of the due process clause limit what a State may do regardless of what procedures are followed. *Rochin* v. *California,* 342 U.S. 165, 173 (1952). Substantive due process is a source of rights where the conduct complained of shocks the conscience or offends the community's sense of fair play and decency. *Id. White* v. *Rochford,* 592 F.2d 381, 383 (7th Cir. 1979). *Johnson* v. *Glick,* 481 F.2d 1028, 1032-1033 (2d Cir. 1973). *Madden* v. *Meriden,* 602 F. Supp. 1160, 1166-1167 (D. Conn. 1985). While the Eighth Amendment does not serve as a direct source of rights for a person in protective custody, the Federal courts have applied Eighth Amendment analysis by analogy to determine what protections detainees are afforded pursuant to the principles of substantive due process. See, e.g., *Madden* v. *Meriden, supra* at 1163; *Meshkov* v. *Abington Township,* 517 F. Supp. 1280, 1284 (E.D. Pa. 1981). See also *Brewer* v. *Perrin,* 132 Mich. App. 520, 529 n.3 (1984). Persons in police custody who have not been convicted of any crimes, therefore, "retain at least those

660, 666 (1962). See *Estelle* v. *Gamble,* 429 U.S. 97, 101 (1976). A prisoner has a right to medical care, in circumstances when a reasonable person would seek medical care, for physical as well as psychological needs. See *Brewer* v. *Perrin,* 132 Mich. App. 520, 529-530 (1984), and cases cited.

constitutional rights that [the Supreme Court has] held are enjoyed by convicted prisoners." *Bell* v. *Wolfish, supra* at 535 n.16, 545. *Revere* v. *Massachusetts Gen. Hosp., supra* at 244. See *Johnson* v. *Glick, supra* at 1032 (it would be absurd to hold that a pretrial detainee has less constitutional protection against acts of prison guards than one convicted of a crime); *Brewer* v. *Perrin, supra* (same).

Applying the substantive due process standard informed by Eighth Amendment principles[9] to the facts of this case, we conclude that there was sufficient evidence here to permit a jury to find that the defendants acted with deliberate indifference to Sandra's medical needs. From the circumstances surrounding McMullan's failure to obtain proper care for Sandra when she was brought to the station, even though she was obviously intoxicated and had difficulty remaining conscious, the jury could have concluded that McMullan was deliberately indifferent to her serious medical needs. The failure of both defendants to follow department rules relating to the care and monitoring of unconscious, intoxicated, and suicidal persons in their custody when faced with an obviously intoxicated and unconscious person, defendant Dudek's profane and racially insulting verbal response to the efforts of other prisoners to summon help when Sandra was making preparations to hang herself, and Dudek's blatant disregard of the warnings of other prisoners, certainly rise to the level of constitutional violation.

---

[9] In instructing the jury that, in order for the defendants to be held liable for a violation of § 1983, the plaintiff must demonstrate that the defendants acted with deliberate indifference to Sandra's serious physical and mental medical needs, the judge employed the Eighth Amendment standard without direct reference to the standards under substantive due process analysis. This instruction was essentially correct because, as we have mentioned earlier in this opinion, the substantive protections afforded detainees under the due process clause are equivalent to the protections enjoyed by convicted prisoners pursuant to the Eighth Amendment. *Bell* v. *Wolfish, supra* at 545. *Revere* v. *Massachusetts Gen. Hosp., supra* at 244. Even if the instruction were error, the defendants failed to object to this aspect of the instruction and have thus waived any right to appeal based on such error. See Mass. R. Civ. P. 51 (b), 365 Mass. 816 (1974). See *Webster* v. *Kowal,* 394 Mass. 443, 446 n.6 (1985); *Cassamasse* v. *J.G. Lamotte & Son,* 391 Mass. 315, 320 (1984).

The Holyoke police department rules specifying the care and monitoring that intoxicated, unconscious, and suicidal persons in custody should receive dictate the minimum level of care to which standards of basic human decency entitle such persons. A jury could find that the defendants' failure to meet these standards and to respond to cries for help was more than mere negligence, that it was shocking to the conscience, and that it constituted deliberate indifference to the serious needs of a detainee in violation of Sandra's rights to substantive due process. The judgments based on the jury verdicts must stand.

2. *Availability of State Remedy.*

The defendants argue that the availability of a State remedy under G. L. c. 229, § 2, for the wrongful death of the decedent precludes an action against the police officers under 42 U.S.C. § 1983. Even assuming that the wrongful death recovery against the city provides an adequate State remedy for the police officers' actions in this case,[10] we conclude that the plaintiff's claims under § 1983 are not barred as a matter of law.

In *Monroe* v. *Pape,* 365 U.S. 167 (1961), the Supreme Court upheld a civil rights action under the predecessor statute to 42 U.S.C. § 1983 (1958) against Chicago police officers for an unreasonable search and seizure in violation of the Fourth and Fourteenth Amendments. The Court explicitly rejected the

---

[10] We note that direct recovery against the police officers under G. L. c. 229, § 2, is barred by the Massachusetts Tort Claims Act, G. L. c. 258, § 2 (1984 ed.), and that the plaintiff's action for wrongful death lies only against the city of Holyoke.

In addition, we express some doubt as to whether the plaintiff's recovery for wrongful death may seriously be considered an adequate remedy for the police officers' unconstitutional treatment of the decedent. Recovery for wrongful death represents damages to the *survivor* for the loss of value of the decedent's life, including but not limited to compensation for loss of the decedent's expected net income, services and companionship. G. L. c. 229, § 2. The plaintiff's claim under 42 U.S.C. § 1983 (1976) seeks recovery on behalf of the *decedent* for the police officers' deprivation of her right to substantive due process under the Fourteenth Amendment. These remedies, though they may be parallel, are sufficiently distinct to counter any argument of double recovery. See *Hall* v. *Tawney,* 621 F.2d 607, 613 (4th Cir. 1980) (public school student's substantive due process claim as to corporal punishment is quite distinct from claim of assault and battery under State tort law).

defendants' argument that, because State law provided a remedy for the defendant's unlawful conduct, the plaintiff could not recover under the Federal law. "It is no answer that the State has a law which if enforced would give relief. The federal remedy is supplementary to the state remedy, and the latter need not be first sought and refused before the federal one is invoked." *Id.* at 183.

The defendants' argument that the plaintiff's § 1983 claim is barred by the availability of a State remedy under G. L. c. 229, § 2, is based upon an incorrect reading of *Parratt* v. *Taylor,* 451 U.S. 527 (1981). In *Parratt,* a Nebraska prison inmate brought an action under 42 U.S.C. § 1983 (1976), alleging that State officials who had lost his hobby kit had deprived him of property without due process of law in violation of the Fourteenth Amendment. The Supreme Court agreed that the plaintiff had been deprived of property, *id.* at 536-537, but concluded that this deprivation was not without "due process of law." *Id.* at 540-544. The Court reasoned that because a predeprivation hearing is not feasible when deprivations of property are effected through random and unauthorized acts of State employees, the availability of a postdeprivation remedy under Nebraska's Tort Claims Act satisfied the due process requirements of the Fourteenth Amendment. *Id.* The Supreme Court's ruling in *Parratt* indicates that an adequate State remedy may satisfy the requirements of procedural due process when the plaintiff alleges a deprivation of liberty or property. Subsequently, courts have applied the *Parratt* rule to deprivations of liberty and property. See *Temple* v. *Marlborough Div. of the Dist. Court Dep't,* 395 Mass. 117, 126 (1985) (postdeprivation safeguards afforded involuntarily committed plaintiff satisfy procedural due process requirements of Fourteenth Amendment). See also *Hudson* v. *Palmer,* 468 U.S. 517, 533 (1984); *Ingraham* v. *Wright,* 430 U.S. 651, 672 (1977). In reaching its conclusion in *Parratt,* however, the Court clearly indicated that the availability of a postdeprivation remedy, although relevant to the issue of procedural due process, would not be relevant to the alleged violation of substantive constitutional rights. "[R]espondent's claims differ from the claims

which were before us in *Monroe* v. *Pape, supra,* which involved violations of the Fourth Amendment, and the claims presented in *Estelle* v. *Gamble,* 429 U.S. 97 (1976), which involved alleged violations of the Eighth Amendment. Both of these Amendments have been held applicable to the States by virtue of the Fourteenth Amendment. . . . Respondent here refers to no other right, privilege, or immunity secured by the Constitution or federal laws other than the Due Process Clause of the Fourteenth Amendment *simpliciter.*" (Citations omitted.) *Parratt, supra* at 536. The Supreme Court limited its holding and discussion in *Parratt* to procedural due process claims under 42 U.S.C. § 1983 (1976).

Numerous courts which have confronted the issue since *Parratt* have held that the availability of a State remedy does not bar a § 1983 claim where the plaintiff alleges a violation of a substantive constitutional right. See, e.g., *Williams* v. *St. Louis,* 783 F.2d 114, 118 (8th Cir. 1986) (equal protection); *Gilmere* v. *Atlanta,* 774 F.2d 1495, 1501 (11th Cir. 1985), cert. denied, 476 U.S. 1115 (1986) (police brutality "shocks the conscience"); *Augustine* v. *Doe,* 740 F.2d 322, 326 (5th Cir. 1984) (unreasonable search and seizure); *Wolf-Lillie* v. *Sonquist,* 699 F.2d 864, 872 (7th Cir. 1983) (unreasonable seizure). See also *Hall* v. *Tawney,* 621 F.2d 607, 613 (4th Cir. 1980) (corporal punishment); *Temple, supra* at 130-131 (specifically noting that court not confronted with substantive due process claim). Unlike procedural due process, which permits the deprivation of life, liberty, or property when such deprivation comports with due process of law, substantive due process imposes absolute limits on State action, irrespective of what procedures are provided. See *Gilmere, supra* at 1500; *Augustine, supra* at 326-327. See also *Parratt, supra* at 545 (Blackmun, J., concurring) ("there are certain governmental actions that even if undertaken with a full panoply of procedural protection, are, in and of themselves, antithetical to fundamental notions of due process"). Where the right asserted stems from a substantive constitutional guarantee, the availability of a postdeprivation remedy under *Parratt* is of no consequence, because the constitutional violation exists independent of any

procedures available to redress the deprivation.[11] See generally Wells & Eaton, Substantive Due Process and the Scope of Constitutional Torts, 18 Ga. L. Rev. 201, 222-223 (1984).

Because the plaintiff alleges a violation of the decedent's right to substantive due process under the Fourteenth Amendment, her claim under 42 U.S.C. § 1983 (1976) is not barred by the availability of a remedy for wrongful death under G. L. c. 229, § 2.

3. *Punitive Damages.*

The defendants argue that there was insufficient evidence to submit the issue of punitive damages to the jury. We disagree. Punitive damages are recoverable in a § 1983 suit where the defendant's conduct is motivated by an evil motive or intent, or where it involves reckless or callous indifference to the plaintiff's federally protected rights. *Smith* v. *Wade,* 461 U.S. 30, 50-51 (1983).[12] *Clark* v. *Taylor,* 710 F.2d 4, 14 (1st Cir. 1983). There was evidence that defendant McMullan, the officer who placed Sandra Smigiel in protective custody, violated department regulations clearly promulgated for safety and protection of detainees: first, by failing to attempt to transfer an intoxicated person to a treatment facility; and then, by placing an unconscious person in a cell. There was also evidence that defendant Dudek, the house officer on duty the night of Sandra Smigiel's detention, ignored the other prisoners' cries for help, and replied with profanity and a racial epithet. The police officers in their testimony denied these contentions, but the jury were, of course, free to disbelieve

---

[11] The application of *Parratt* outside of the procedural due process context would emasculate 42 U.S.C. § 1983 (1976), as a meaningful Federal remedy. See *Augustine, supra* at 326-327; *Frost* v. *Honolulu,* 584 F. Supp. 356, 363 (D. Hawaii 1984). Since it is hard to imagine a violation of substantive due process which would not provide a concomitant remedy under State law, most if not all Federal civil rights claims under 42 U.S.C. § 1983 (1976), would in effect be precluded by a novel and unintended form of State law preemption.

[12] In *Smith* v. *Wade, supra* at 56, the Supreme Court upheld an award of punitive damages in factual circumstances analogous to this case, where a correctional officer failed to protect an inmate from beatings and sexual assault by his cellmates.

the police. Thus, there was evidence of reprehensible conduct, shocking to the conscience and offensive to all standards of common decency, which clearly rises to the threshold level of "callous disregard" for the decedent's substantive due process rights, and the judge did not err in submitting the issue of punitive damages to the jury.

*Judgments affirmed.*